## Panezzi's Estate.

*Decedents' estates—Claim against—Set-off—Judgment—Check—Evidence.*

Where a woman presents a judgment note for $2,000 as a claim against a decedent's estate, and the note is undisputed, but the executors offer to set off a check paid by the decedent to the claimant shortly before his death, it is reversible error for the court to find from certain statements made by the claimant as a witness, that the check should be applied toward the payment of the judgment, where it appears that such statements were made under a misapprehension resulting from the claimant's imperfect knowledge of English, and her other testimony shows conclusively that the check was received by her as a repayment of money which the decedent held for her as an investment, and that the check had nothing whatever to do with the judgment.

Argued April 22, 1909. Appeal, No. 150, April T., 1909, by Julia Pasquale, from decree of O. C. Westmoreland Co., Aug. T.,

1908, No. 59, dismissing exceptions to adjudication in Estate of Sylvester Panezzi, deceased. Before RICE, P. J., PORTER HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Exceptions to adjudication. Before STEELE, P. J.
The opinion of the Superior Court states the case.

*Error assigned* was in dismissing exceptions to adjudication.

*James B. Weaver*, for appellant.

*H. E. Marker*, with him *C. B. Hollingsworth*, for appellee.

OPINION BY MORRISON, J., July 14, 1909:

The sole question raised in this appeal is whether the learned judge of the court below erred at the audit and distribution of said estate in holding that a check, dated January 30, 1907, for $1,000, drawn by Sylvester Panezzi, in favor of the appellant, should be applied as a payment on one of the judgments which the appellant held against the decedent and his real estate at the time of his death. There were two judgments, the first, No. 312, August Term, 1907, for $1,000, with interest from March 20, 1905; the second, No. 313, August Term, 1907, for $1,000, with interest from July 31, 1906. There was nothing on the check indicating that it was a payment on account of said judgments, or either of them, nor was there any receipt or evidence whatever tending to show that the check was a payment on either of said judgments, except the testimony of the appellant. She was called and sworn and made a general witness on behalf of the estate, and, therefore, she became a competent witness. The learned court says: "A fair consideration of her evidence leads us to believe that the payment was entitled to be a credit on the two judgments held by Julia Pasquali. This will be done."

An examination of the testimony of Julia Pasquali leads us to a different conclusion. It is manifest from her testimony that she spoke the English language imperfectly and that her knowledge of the same was limited. It is true that the testi-

mony she gave the first time she was on the stand might possibly bear the inference that the $1,000 check should be applied as a payment on one of the judgments. But when she was recalled on a subsequent date and examined by her own counsel and cross-examined by both of the attorneys for the estate, and also by the learned court, we are strongly impressed with the idea that she never intended to say that the $1,000 was a payment on either of the judgments.

Julia Pasquali recalled. Examined by Mr. Marker: "Q. Did Sylvester Panezzi ever owe you anything outside of these two judgments and these other claims; after these judgments were given to you, did he ever owe you anything outside of these two claims? A. No. Q. He never did? The Court: He paid you $1,000 on account of those notes? A. I gave it to him; that was money he owed me. Q. On the $2,000 he gave you $1,000? A. No. Q. And then he gave you $1,000 there? A. No, sir; he didn't give you $1,000." Mr. Hollingsworth objects to this witness testifying in her favor. The Court: Objection overruled; exception. Mr. Weaver: I show you check for $1,000, dated January 30, 1907, before he died; what was that given to you for? Mr. Marker objects to this as incompetent and irrelevant. The Court: The counsel have asked this witness whether the two judgments and two small claims were the only matters in which Sylvester Panezzi was indebted to her, and whether he owed her either at the time of the judgment, or since, any other sums; we are of the opinion that they have already gone into this matter and that the testimony is competent; exception to administrator. "Q. That check was given to you? A. Yes, sir; it was given to me, for he was put money in the Loyalhanna Brewery and when we put them in together and when we got them back we separate them; we was keeping our money together; this money he got back is money from the Loyalhanna Brewery when the brewery was sold; he got $2,200; he give me $1,000, and $1,200 himself and that $2,000 on judgment note is extra; I had it in the spring recorded here before he died; this is his writing and that is my writing; you can prove the other two notes; he was in my house and I boarded him and I was housekeeper and we was put together all our money; he has no

family; his mother and brother all in the old country; I keep boarder to help him."

Cross-examination by Mr. Marker: "Q. You were in his house? A. Yes, sir, we built the house together. Q. Who furnished the money? A. He furnished the money and I furnished the money, too; you can ask everybody when I was working out."

Examination by Mr. Hollingsworth: "Q. When was it you furnished the money for the brewery? A. When the brewery started in the new. Q. Did you have the same stock in your name? A. No, I am married and my man run away and I cannot keep it in my name and I was scared and it was in his name; the house and lot was in his name and the brewery was in his name. Q. Did you have a note for $1,000; what did you have to show for that transaction, for this $1,000, you say you put in the brewery? A. I ain't got no note; if he wasn't honest I can't prosecute him. Q. You had notes for the $2,000? A. Yes, sir, before this. Q. Why didn't you get a note for this other $1,000 that you say you put in the brewery? A. He gave me the money then. Q. It had been in the brewery a long time? A. Yes, sir. Q. And you had no note for this? A. No, because I trust him; but he didn't have the property paid; he was in the building and loan, and after he was paid out in his business he make me these two notes. The Court: Q. When was the Loyalhanna Brewery stock taken, what year? A. 1902, when he was beer agent. Q. How much money did you give him in the brewery in 1902? A. $1,000 and that he gave me back. Q. I want to know what you gave him the other $2,000 for that he gave you a note for? A. That was all together and he gave me $2,000; I was housekeeper. Q. Did he give you that $2,000 on the judgments for what he owed you up to that time? A. Because I was his housekeeper six years and I always used my money for the house. Q. Did that $2,000 for the notes cover everything? A. Yes, sir. Q. Money and everything? A. Yes, sir. Q. That included for housekeeping and money given for the brewery and everything? A. No, the money for the brewery was extra; he was give it to me, money for I was keep that note besides this for guarantee for myself if he would die. Q. He would hardly likely give you $2,000 for keeping house six

years; wasn't that for everything? A. Everything. Q. Brewery and everything? A. Brewery is extra."

Examination by Mr. Hollingsworth: "Q. When you went into that brewery you got $1,000? A. Yes, sir. Q. Didn't the brewery sell out two for one? A. Well,—— Q. When he got that why didn't you get $2,000 back? A. Because, I didn't want it; for he helped me and I helped him." A. Abbattichio, recalled.

Examined by Mr. Weaver: "Q. Mr. Abbattichio, you were personally acquainted with Sylvester Panezzi in his lifetime? A. Yes, sir. Q. Did he or not have stock in the Loyalhanna Brewery? A. Yes, sir. Q. Do you know how much? A. I don't know how much; he got back double when the brewery sold out. Q. Do you know about what time that occurred? A. I have forgotten."

Examination by Mr. Hollinsworth: "Q. It was along in the fall some time? A. Yes, sir."

Examination by Mr. Marker: "Q. Wasn't that done before license court, that you got the money for the Loyalhanna Brewery? A. I don't remember. Q. Wasn't it in March of the year? A. I don't remember. The decedent owed the society $10.00, leaving $100 to be paid to the administrator."

A consideration of the above testimony, we think, makes it quite clear that the appellant did not consider that the decedent was indebted to her for the $1,000 that went into the brewery stock; she only expected it returned in case of a sale of the stock. The stock was all in the name of Sylvester Panezzi and if $1,000 worth of it belonged to the appellant, then he held it as trustee for her. It is quite apparent that when she was on the stand and examined the first time she did not have in mind the $1,000 which went into the brewery stock at all. According to her testimony she had given the money to the decedent for investment in the brewery stock and on January 30, 1907, he returned to her by check $1,000 and she considered that matter closed. But when the check was shown to her and her attention directed to the $1,000 transaction, the vigorous examination by the two attorneys for the estate and by the learned judge of the orphans' court only brought out with greater clearness, considering her broken English, that nothing had been

paid on the judgments.· Moreover, the testimony tends to show that the appellant ought to have had more than $1,000 out of the brewery transaction, but she said she was satisfied with the $1,000. We consider it manifest error in the learned judge to apply the $1,000 as a payment on one of the judgments. As we have already said there is not a particle of evidence sustaining that application of the $1,000, except the inferences drawn by the court from the testimony of the appellant. But taking the whole of her testimony and giving it a fair and impartial consideration, it is impossible for us to agree with the conclusion reached by the learned judge below.

The real question is, did the appellant have $1,000 in brewery stock in the name of the decedent, and did he pay that back to her on January 30, 1907, by the check? The validity of the judgments is not questioned. No creditor is attacking them as fraudulent and nobody is asking that they be opened. On the facts disclosed by the evidence, if the decedent gave her the judgment notes she is entitled to have the judgments entered thereon paid in full out of the decedent's estate.

The assignments of error are sustained and the decree is reversed, and it is now ordered and decreed that the appellant's judgments, interest and costs, be paid out of the decedent's estate, together with the costs of this appeal.